UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

CONVERGEN ENERGY WI LLC,

    Plaintiff,

v.                                                           Case No. 20-cv-00543

L'ANSE WARDEN ELECTRIC COMPANY, LLC,

    Defendant.

**DEFENDANT'S MEMORANDUM IN OPPOSITION OF RENEWED MOTION FOR PRELIMINARY INJUNCTION**

**PRELIMINARY STATEMENT**

During the last conference call, the Court asked why this case was filed in this jurisdiction when there are other pending actions in the Eastern District of Wisconsin and the Southern District of New York. The real answer, which Plaintiff Convergen Energy WI, LLC ("**CEW**") did not provide, is that CEW is trying to avoid the New York action and hoping for a better outcome closer to home. The New York federal judge has already ruled against CEW – temporarily restraining and subjecting CEW and the other New York defendants to expedited discovery. The New York court understood that there really is no justifiable explanation for the double dealing that resulted in the recent sale of CEW for millions less than it is worth and revised supply terms that shifted millions in profit to CEW under the contested supply agreement.

The resulting forum shopping and claim splitting is well reflected in the fact that CEW's injunction motion is based solely on the supply agreement that is at the heart of the New York fraud case (as well as the Eastern District of Wisconsin action). Indeed, Defendant L'Anse

Warden Electric Company, LLC ("**L'Anse**") sued CEW in New York to rescind the supply agreement based on fraud. Thus, the New York court will determine the viability of the supply agreement. Nevertheless, CEW does not seem to care about potentially inconsistent rulings or even the merits of its application. CEW filed for an injunction without articulating <u>any</u> irreparable harm. CEW admits that it seeks money damages for unpaid invoices, which is the death knell for equitable relief. CEW merely points to contract language in the supply agreement (that the fraudsters drafted and signed) about the possibility of irreparable harm in the event of an unspecified breach of that agreement. Under both New York and Wisconsin law, that type of contract provision cannot be the basis for injunctive relief. The federal court system is not a casino where CEW can switch slot machines after a loss.

## **RELEVANT PROCEDURAL HISTORY**

### A. The Claims Here are Redundant of Two Other Actions

On May 11, 2020, the New York action plaintiffs emailed a draft complaint to CEW and its co-defendants and stated that it will be filed "[a]bsent resolution of the issues raised in the attached complaint by noon Thursday, May 14, 2020." *See* Gold Dec. ¶ 3. None of the defendants responded and the New York action was filed on May 14, 2020. *See Id*. The New York complaint, among other things, seeks rescission of the supply agreement. *See* Complaint ¶ 95 - 99.

In anticipation of the New York action, CEW and two of the other New York defendants filed a declaratory judgment action in Brown County, Wisconsin the same day that the New York plaintiffs said they would file suit absent resolution. *See* Gold Dec. ¶ 4. The declaratory judgment action seeks a declaration with respect to some but not all of the issues raised in the New York action (*i.e.*, however, the issues presented in the declaratory judgment action are wholly duplicative of the New York action). This type of anticipatory filing runs counter to both

New York and Wisconsin law. *see e.g. OMC LLC v. S&E Gourmet Cuts, Inc.*, No. 16-CV-833-WMC, 2017 WL 3484964, at *3 (W.D. Wis. Aug. 14, 2017) (dismissing a declaratory judgment action as an anticipatory lawsuit where it was filed "to preempt the imminent threat by defendant"); *Skiva Int'l, Inc. v. Minx Int'l Inc.*, No. 15-CV-4580 KBF, 2015 WL 5853854, at *2 (S.D.N.Y. Oct. 7, 2015) (dismissing a declaratory judgment action as an anticipatory lawsuit where "Plaintiff plainly filed this suit in anticipation of defendant filing a . . . suit against it."). The declaratory judgment action was the first attempt to evade the New York action and was removed to the Eastern District of Wisconsin. The expectation is that the Eastern District case will be transferred to and consolidated with the New York action, as it is superfluous of the claims already at issue in New York. *See* Gold Dec. ¶ 9.

Not satisfied with the Eastern District of Wisconsin case, CEW filed yet another litigation in Dane County on June 10, 2020, which was removed to this Court. Among other deficiencies, the complaint in this action is guilty of claim splitting because the same parties and operative facts are already before two other courts. *See, e.g.*, *Roumann Consulting Inc. v. Symbiont Constr., Inc.*, No. 18-C-1551, 2019 WL 3501527, at *6 (E.D. Wis. Aug. 1, 2019) (dismissing claims for violating the doctrine of claims splitting because there were identical parties and operative facts); *Scholz v. United States*, No. 19-CV-1074, 2020 WL 3051565, at *4 (E.D. Wis. June 8, 2020) (dismissing the complaint on the basis of claim splitting).

Contrary to CEW's application, the supply agreement does not mandate that an injunction be filed in the Western District of Wisconsin or any specific jurisdiction. *See* Supply Agreement at Page 7. This transgression – splitting its claims for relief among several federal courts – alone justifies denial of CEW's request for an injunction.

L'Anse removed this action to the Western District of Wisconsin and then moved to transfer the action to the Southern District of New York. The New York action plaintiffs are filing a motion to stay the arbitration pending the conclusion of the New York action simultaneously with this filing. *See* Gold Dec. ¶ 10.

### B. Choice of Law

By its application, CEW is seeking to enforce a contract created, "negotiated," consummated, and executed in New York by two bad actors (both named in the New York action) who themselves were based in New York. *See* Declaration of Camilo Patrignani ¶ 14 ("Patrignani Dec."). The only issue is whether the New York conduct at issue constitutes fraud. The supply agreement is either void or not, depending on the outcome of the New York fraud action. The fact that the supply agreement is between one party in Wisconsin (CEW) and another in Michigan (L'Anse) does not alter the conclusion that New York law applies here.

Under New York law, "[i]f conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012) (quoting *Cooney*, 81 N.Y.2d at 72, 595 N.Y.S.2d at 922, 612 N.E.2d at 280). Under Wisconsin law, the threshold test is whether the contacts of one state are so minimal that it would be "officious intermeddling" to apply that state's laws. *Love v. Blue Cross & Blue Shield of Georgia, Inc.*, 439 F. Supp. 2d 891, 892 (E.D. Wis. 2006) (quoting *American Standard Ins. Co. v. Cleveland*, 124 Wis.2d 258, 369 N.W.2d 168 (1985)). Wisconsin courts then look to the following factors: "(1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." *Id*. at 892–93. This

is "a qualitative analysis of the contacts that one or more jurisdictions have with the facts." *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 49, 251 Wis. 2d 561, 588, 641 N.W.2d 662, 675–76. And Michigan courts "apply Michigan law unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286, 562 N.W.2d 466, 471 (1997) (declined to extend on other grounds). Based on the totality of the circumstances, there can be little debate that New York law applies.[1] For ease of reference, however, L'Anse cites to both Wisconsin and New York cases to eliminate any threshold issues over choice of law.

## ARGUMENT

### I. CEW Fails to Satisfy the High Standard of a Preliminary Injunction.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016) (internal quotations and citations omitted); *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). "Of the three, the question whether plaintiff will suffer irreparable harm is sometimes considered most important." *Reinders Bros. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 52–53 (7th Cir. 1980). CEW's motion for an injunction fails with respect to each of these factors.

### A. CEW Fails to Demonstrate Irreparable Harm

CEW is seeking payment on unpaid invoices (*i.e.*, prejudgment money damages), which is not grounds for an injunction. *See D.U.*, 825 F.3d at 339 (holding that a party seeking a preliminary injunction must demonstrate that money damages would be inadequate should they

---

[1] Upon information and belief, CEW's ultimate owner is a resident of Florida for jurisdictional purposes, making the relationship with Wisconsin further attenuated. See *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998) (citing *Carden v. Arkoma Associates*, 494 U.S. 185 (1990)); *See* Gold Dec. ¶ 12.

win the lawsuit); *Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*, 437 F. App'x 57 (2d Cir. 2011) (denying a preliminary injunction because plaintiff could be fully compensated by money damages.).

The only claim of irreparable harm is to a conclusory statement in the fraudulently procured supply agreement. CEW MOL ¶ 19. This is, in and of itself, insufficient. *See Int'l Ass'n of Machinists Dist. 10 v. Wisconsin*, 194 F. Supp. 3d 856, 865 (W.D. Wis. 2016) (denying an injunction because "reliance on vague and conclusory statements about irreparable harm are simply not enough to show that they are entitled to the extraordinary remedy of preliminary injunctive relief."). A contract statement on what may constitute irreparable harm is not sufficient to grant an injunction. *See Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, No. 14-CV-748-WMC, 2016 WL 6477011, at *1 (W.D. Wis. Nov. 2, 2016) (where "the contract states that a violation of the Agreement may cause 'irreparable harm,' this serves as an insufficient basis to order injunctive relief[.]"); *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) ("the contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate."); *Int'l Creative Mgmt., Inc. v. Abate*, No. 07 CIV. 1979 PKL, 2007 WL 950092, at *6 (S.D.N.Y. Mar. 28, 2007) (holding the moving party "cannot rely on the contract provision alone to demonstrate irreparable harm."). CEW never articulates any actual irreparable harm it will face absent injunctive relief (because it cannot).

B.  **CEW Fails to Demonstrate A Likelihood of Success**

CEW's entire claim is predicated on the enforceability of the supply agreement. CEW cites to the termination, arbitration and pricing provisions of the agreement in articulating its claim. The fatal flaw to this is that the supply agreement is not enforceable because it is the

product of a fraudulent scheme. The supply agreement was not negotiated at arm's-length. *See* Patrignani Dec. ¶ 13; *See* Complaint ¶ 53. The parties did not "negotiate" the supply agreement. *See* Patrignani Dec. ¶ 13. The two signatories to the supply agreement are both aligned in the fraud, one a defendant, one an unnamed co-conspirator. *See* Gold Dec. ¶ 11.

Under New York law, fraud will void a contract and any arbitration clause it contains. *See Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 347–48 (S.D.N.Y. 2011) (holding that an agreement and its arbitration clause was unenforceable because defendants "misrepresented who they were" and "the entire transaction proposed by Defendants, including the Contract, was a sham designed to perpetrate their fraudulent scheme."); *332 E. 66th St., Inc. v. Walker*, 59 Misc. 3d 1216(A), 106 N.Y.S.3d 727 (N.Y. Sup. Ct. 2018) (holding that establishing the agreement was not the product of an arms' length transaction will render the whole agreement including the arbitration clause unenforceable.); *Comprehensive Merch. Catalogs, Inc. v. Madison Sales Corp.*, 521 F.2d 1210, 1213 (7th Cir. 1975) ("Of course, if the alleged fraud was part of a grand scheme that permeated the entire contract, including the arbitration provision, the arbitration provision should fall with the rest of the contract."); *Anderson St. Realty Corp. v. New Rochelle Revitalization, LLC*, 78 A.D.3d 972, 974 (2010) (holding fraud makes a contract and any arbitration clause contained therein void where the fraudulent conduct was "part of a grand scheme that permeated the entire contract," which is established by showing it was not the result of an arm's length negotiation).

Furthermore, the arbitration clause will likely be unconscionable. Under the Federal Arbitration Act, "the usual defenses to a contract such as fraud, unconscionability, duress and lack of consideration may be applied to invalidate an arbitration agreement[.]" *Wisconsin Auto Title Loans, Inc. v. Jones*, 696 N.W.2d 214, 219, 280 Wis.2d 823, 831–32, 2005 WI App 86, ¶

10 (Wis. App. 2005). Unconscionability is defined as "the absence of a meaningful choice on the part of one party, together with contract terms that are unreasonably favorable to the other party. "A contractual clause is unconscionable when there is a certain quantum of procedural unconscionability and a certain quantum of substantive unconscionability." *Id*. at 833; *see also Brennan v. Bally Total Fitness,* 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) (applying the same definition of unconscionability). "The more substantive unconscionability present, the less procedural unconscionability is required, and vice versa." *Coady v. Cross Country Bank*, 729 N.W.2d 732, 741, 299 Wis.2d 420, 439, 2007 WI App 26, ¶ 26 (Wis. App. 2007) (internal quotations and citations omitted).

Even if the supply agreement is not voided per se due to fraud or unconscionability, there remains the open question of offset. One issue to be resolved in the New York action is the unlawful shifting of profit to CEW from L'Anse, a power plant and customer of CEW. *See* Complaint ¶ 47. Consequently, L'Anse is entitled to common law right to set off. "The right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L. Ed. 2d 258 (1995) (*quoting Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)); *PC COM, Inc. v. Proteon, Inc.*, 906 F. Supp. 894, 903 (S.D.N.Y. 1995) ("The common law right of setoff allows parties that owe mutual debts to each other to assert the amounts owed, subtract one from the other, and pay only the balance"); *In re Whimsy, Inc.*, 221 B.R. 69, 72 (S.D.N.Y. 1998) ("Rooted in the common law, setoff is a creditor's equitable right to deduct a debt it owes to a debtor from a claim it has against the debtor arising out of a separate transaction."); *see generally Miller v. United States*, 422 B.R. 168, 171 (W.D. Wis. 2010). By the

injunction, CEW is asking for the ultimate relief in the case – payment – which is wholly inappropriate. *See D.U.*, 825 F.3d at339; *Bisnews AFE (Thailand) Ltd.*, 437 F. App'x at 57.

The balance of the equities does not favor CEW. Issuance of a preliminary injunction would harm L'Anse, fuel CEW's litigation expenses, and would only serve to allow CEW to continue to benefit from the fraudulent scheme.

## CONCLUSION

CEW has ignored basic Wisconsin procedural law in its effort to flee the New York action and further scrutiny by the New York court, which has forced L'Anse to needlessly and at great expense file two motions for removal, a motion to transfer (and another one in progress), a motion to expedite, an opposition to an injunction, and a motion to stay an arbitration. CEW's attempts to circumvent the New York action only serves to highlight the frivolous nature of its efforts. The relief requested in this action should be denied and this case should be dismissed or voluntarily withdrawn.

Respectfully submitted this 23rd day of June, 2020.

      *s/R. George Burnett*
      R. George Burnett
      Law Firm of Conway, Olejniczak & Jerry, S.C.
      P.O. Box 23200
      Green Bay, WI 54305-3200
      Phone: (920) 437-0476
      Fax: (920) 437-2868
      Wis. State Bar No. 1005964
      gb@lcojlaw.com

      Michael Stolper
      Seiden Law Group, LLP
      469 Seventh Avenue, Suite 502
      New York, NY 10018
      Admission Pro Hac Vice Pending

      *Attorneys for Defendant, L'Anse Warden Electric Company, LLC*