# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CONVERGEN ENERGY WI, LLC,<br>Plaintiff,<br><br>vs.<br><br>L'ANSE WARDEN ELECTRIC COMPANY, LLC,<br>Defendant. | Case No. 3:20-cv-0543<br><br>Dane County Wisconsin<br>Cir. Ct. Case No. 20-cv-1199 |

## RESPONSE TO STATEMENT OF FACTS
## PROPOSED BY CONVERGEN ENERGY WI, LLC

Plaintiff L'Anse Warden Electric Company, LLC ("L'Anse"), by its attorneys, hereby responds to the proposed statement of record facts filed by Convergen Energy Wisconsin, LLC ("CEW") in support of its motion for a preliminary injunction. This response relies upon the June 23, 2020 Declaration of Camilo Patrignani ("Patrignani Dec.") and Declaration of Dov Gold ("Gold Dec.") filed in this action.

1. Plaintiff CEW owns a proprietary process to convert waste materials such as paper and plastic into a coal substitute fuel pellet. (Hansen Aff., ¶ 3.)

    **Response**: Undisputed.

2. L'Anse produces electric power utilizing, in part, the CEW pellets as fuel. Defendant L'Anse, through other affiliates in the chain of ownership, is a wholly owned subsidiary of a conglomerate headed by Libra Capital US, Inc. ("Libra"). (*Id*., ¶ 4.)

    **Response**: Disputed. L'Anse is owned by Convergen Energy, LLC. Convergen Energy, LLC is ultimately owned by the Libra Group. Patrignani Dec. ¶ 3.

3. Prior to January 31, 2020, CEW was also a subsidiary of Libra. CEW sold its fuel pellet

4

products to L'Anse in Michigan, where L'Anse then uses the product to generate electricity. (*Id.*, ¶ 5.)

**Response**: Disputed. CEW was a subsidiary of Convergen Energy, LLC. Convergen Energy, LLC is ultimately owned by the Libra Group. Patrignani Dec. ¶ 3 - 4.

There was no contract for fuel pellets and L'Anse ordered pellets at its sole discretion. CEW billed L'Anse were via invoice. Patrignani Dec. ¶ 5.

4. CEW produces the fuel pellets in Green Bay and then ships them to a Michigan warehouse or directly to the L'Anse facility. L'Anse receives the pellets from that warehouse for use or directly from CEW's Green Bay facility, and CEW bills L'Anse for pellets received. Title to the goods transfers when L'Anse receives the pellets at its facility. (*Id.*, ¶ 6.)

**Response**: Undisputed.

There was no contract for fuel pellets and L'Anse ordered pellets at its sole discretion. CEW billed L'Anse were billed via invoice. Patrignani Dec. ¶ 5.

5. During the fall and winter of 2019-2020, CEW was in the process of being sold to a third-party, NianticVista Energy, LLC. (*Id.*, ¶ 7.)

**Response**: Disputed. CEW was in the process of being sold in a fraudulent transaction to a purported third-party. Steven Brooks ('Brooks"), an employee of Libra Capital US, Inc. at the time of the sale, was charged with negotiating the sale on behalf of the seller but his interests secretly lay with the seller. Patrignani Dec. ¶ 8. Brook secretly signed a $2.3 million personal guaranty to finance NianticVista Energy, LLC's acquisition of CEW. Patrignani Dec. ¶ 9. In part, this flagrant omission has led L'Anse and the other plaintiffs in the New York action to believe Brooks secretly retained an interest in CEW and was negotiating on his own behalf against his employer. Patrignani Dec. ¶ 10. As part of the expedited discovery in the Southern District of New York, L'Anse and the other plaintiffs

4

submitted interrogatories to CEW, Brooks and the other defendants, requesting them to identify those with a financial interest in CEW. Gold Dec. ¶ 6. Despite extensions being granted, defendants have repeatedly missed deadlines, and no response has been provided. *Id*.

6. Prior to the sale of CEW, L'Anse and CEW were co-borrowers under a credit facility with BMO Harris Bank, N.A. ("BMO"). The facility included a term loan, a line of credit, and a letter of credit which was placed as an operating security under a provision of a power purchase agreement ("PPA") to which L'Anse was a party. (*Id*., ¶ 8.)

   **Response**: Undisputed.

7. After the acquisition, BMO agreed to continue to extend credit to L'Anse, on the condition that CEW and L'Anse enter into a supply contract to ensure that CEW would continue to supply fuel pellets to L'Anse after the acquisition. (*Id*.)

   **Response**: Disputed. The November 5, 2019 offer by NianticVista Energy, LLC made for CEW was through Brooks and stated: "As a condition to closing, a supply agreement between the Company and its affiliate, the L'Anse Warden Electric Company, must be executed under standard market terms." Patrignani Dec. ¶ 11. This offer and condition came about before the BMO bank loan documentation. *Id*.

8. At BMO's direction, the parties negotiated a January 31, 2020 "Engineered Fuel Pellet Supply Agreement" ("Supply Agreement") which specified a ten-year term and set market-based pricing and broad quantity parameters going forward. As set forth in the Supply Agreement, BMO owns a comprehensive collateral interest in the Supply Agreement. The Supply Agreement was signed on January 31, 2020. (*Id*., ¶¶ 9-10, Exh. A, p.1.)

   **Response**: Disputed. The November 5, 2019 offer by NianticVista Energy, LLC made for CEW was through Brooks and stated: "As a condition to closing, a supply agreement

between the Company and its affiliate, the L'Anse Warden Electric Company, must be executed under standard market terms." Patrignani Dec. ¶ 11. This offer and condition came about before the BMO bank loan documentation. *Id*. The parties did not act at BMO's direction but rather pursuant to the offer by NianticVista Energy, LLC. Patrignani Dec. ¶ 12. The parties did not "negotiate" because Brooks was misinforming L'Anse and secretly double dealing for himself. Patrignani Dec. ¶ 13.

9. The parties continue to operate under the Supply Agreement after the acquisition until April 1, 2020. (*Id*., ¶ 11.)

   **Response**: Disputed. The Supply Agreement is part of a fraudulent scheme. Patrignani Dec. ¶ 5. Prior to the Supply Agreement, L'Anse purchased pellets at its sole discretion and was billed via invoice. Patrignani Dec. ¶ 5. L'Anse is operating under the status quo prior to the fraud. Patrignani Dec. ¶ 5. Theodore Hansen and Brian Mikkelson are named co-conspirators in the complaint filed by L'Anse in the Southern District of New York and were managing L'Anse and sending payment essentially to themselves as executives at CEW until the fraud was discovered. Patrignani Dec. ¶ 6.

10. On or about April 1, 2020, L'Anse ceased making any payments to CEW. As of June 10, 2020, L'Anse owed CEW roughly $300,000, with that amount continuing to increase with each shipment of pellets. (*Id*.)

    **Response**: Disputed. The balance sought is pursuant to a fraudulent agreement. Patrignani Dec. ¶ 7. In addition, L'Anse is offsetting its damages against CEW as alleged in the complaint filed in the Southern District of New York. Patrignani Dec. ¶ 7.

11. The timing of L'Anse's choice to discontinue payment for fuel coincides with the inception of a larger dispute between Libra—L'Anse's ultimate corporate parent—and CE-

Wisconsin, relating to the sale of CEW, which has spawned litigation in Brown County Circuit Court (since removed to the Eastern District of Wisconsin), the Southern District of New York and, as it relates to this case, the American Arbitration Association (AAA). (*Id.*, ¶¶ 12, 17, Exh. D; *Convergen Energy WI, LLC, et al. v. Convergen Energy LLC, et al.*, E.D. Wis. Case No. 20-cv-00823; *Convergen Energy LLC et al. v. Steven J. Brooks, et al.*, S.D.N.Y. Case No. 1:20-cv-03746.)

**Response**: Disputed. On May 11, 2020 L'Anse advised CEW of the fact that the contract was void due to fraud when it sent a draft New York complaint to CEW seeking rescission of the Supply Agreement based on fraud. Gold Dec. ¶ 3. CEW did not respond to this attempt at settlement and L'Anse with the other victims of the fraud scheme filed a complaint in the Southern District of New York. *Id*.

12. Despite not making payments, L'Anse continues to request and accept pellets at its facility. L'Anse has not raised any issues with the quality of the pellets, or otherwise suggested that CEW has not performed its obligations under the Supply Agreement. (*Id.*, ¶ 13.)

    **Response**: Disputed. L'Anse has filed a complaint in the Southern District of New York seeking rescission of the Supply Agreement based on fraud.

13. In an email dated June 11, 2020, L'Anse informed CEW that it will proceed with a planned shutdown of its facility between June 14, 2020 and June 26, 2020, and then intends to continue to use CEW fuel pellets to generate electricity:

    > Good afternoon. I want to pass along that we are scheduled for a two-week outage starting at 1600, Sunday June 14th. We will not be taking in any deliveries of pellets here at the plant while we are down. We anticipate bringing up the unit on Friday, June 26th and expect to start using pellets again at that time.

    (Hansen Aff., ¶ 14, Exh. B.)

    **Response**: Disputed. L'Anse is not under a "planned shutdown" but a scheduled outage

for maintenance. Patrignani Dec. ¶ 15. The cited email expresses an expectation to continue using pellets in general, not specifically CEW's pellets.

14. CEW has sent invoices and otherwise made repeated demands that L'Anse pay its debt, but L'Anse has ignored CEW's requests. (*Id*., ¶ 15, Exh. C.)

    **Response**: Disputed. On May 11, 2020 L'Anse advised CEW of the fact that the contract was void due to fraud when it sent a draft New York complaint to CEW seeking rescission of the Supply Agreement based on fraud. Gold Dec. ¶ 3. CEW did not respond to this attempt at settlement and L'Anse with the other victims of the fraud scheme filed a complaint in the Southern District of New York. *Id*.

15. The Supply Agreement states that, if either party seeks to terminate the agreement for default, it must first give notice and opportunity to cure the default to BMO. No such notice of default has been sent to BMO by L'Anse. (*Id*., Exh. A., p.1.)

    **Response**: Disputed. On May 11, 2020 L'Anse advised CEW of the fact that the contract was void due to fraud when it sent a draft New York complaint to CEW seeking rescission of the Supply Agreement based on fraud. Gold Dec. ¶ 3.

16. Pursuant to the Supply Agreement, disputes under the agreement are to be resolved using AAA arbitration. CEW has filed an arbitration demand with the AAA. However given AAA procedures, as well as the restrictions of the current health crisis, CE- Wisconsin believes that an arbitrator may not be appointed on the matter until sometime in August 2020. (*Id*., ¶ 17.)

    **Response**: Disputed. L'Anse has filed a complaint seeking rescission of the Supply Agreement and is filing a Motion to Stay the Arbitration in the Southern District of New York simultaneously with this filing. Gold Dec. ¶ 10.

Respectfully submitted this 23rd day of June, 2020.

   *s/R. George Burnett*
R. George Burnett
Law Firm of Conway, Olejniczak & Jerry, S.C.
P.O. Box 23200
Green Bay, WI 54305-3200
Phone: (920) 437-0476
Fax: (920) 437-2868
Wis. State Bar No. 1005964
gb@lcojlaw.com

Michael Stolper
Seiden Law Group, LLP
469 Seventh Avenue, Suite 502
New York, NY 10018
Admission Pro Hac Vice Pending

*Attorneys for Defendant, L'Anse Warden Electric Company, LLC*