UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

CONVERGEN ENERGY WI LLC,

    Plaintiff,

    v.                                                          Case No. 20-cv-00543-WMC

L'ANSE WARDEN ELECTRIC COMPANY, LLC,

    Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO TRANSFER**

---

**PRELIMINARY STATEMENT**

The parties' dispute centers around a single transaction and occurrence (the sale of CEW) that consummated on January 30, 2020 in New York City. The supply agreement is part of that singular transaction. It is not divisible. Yet CEW, in an effort to circumvent the New York court, has attempted to do just that, removing some but not all of the dispute from New York and filing it in the Eastern District of Wisconsin (by way of Brown County circuit court). To split the matter even further, CEW then filed this action, which is redundant of both New York and the Eastern District actions. Notwithstanding this, CEW continues to imaginatively argue that three federal courts and an arbitration panel should adjudicate a single transaction and occurrence without any risk of inconsistent decisions or findings of fact. CEW points to the "clear and unambiguous" agreement that its New York co-defendants drafted and signed themselves as part of the fraud. This is wholly improper.

# ARGUMENT

1. **A Wisconsin Injunction Will Conflict with the New York Action**

CEW cannot overcome the fact that by filing this action, it is seeking two different tribunals to decide the merits (or lack thereof) of the supply agreement controversy. If this case is not transferred, that is exactly what will happen. Contrary to CEW's memorandum (on page 12), CEW's request for injunctive relief does require this Court to make a determination as to the validity of the supply agreement itself. Putting aside the total lack of proof of irreparable harm, this Court will have to consider the likelihood of success on the merits, which of course turns on the enforceability of the supply agreement itself. If this court enters an injunction to enforce a supply agreement that the New York court finds fraudulent and unenforceable, the decisions will be inconsistent and obviously in conflict. CEW is simply being disingenuous in its suggestion that these cases share nothing in common.

Thus, CEW is dead wrong when it says, "the preliminary injunction will not interfere with or impact any decision by the AAA or, for that matter, by the Southern District of New York." (CEW memorandum at 1). It most definitely will because it presents the very same issue as presented in New York – the viability of the supply agreement.[1] In New York, the issue of whether the supply agreement is enforceable or not will be decided. That is the same issue presented in Wisconsin, in both the Eastern District, Western District, and AAA arbitration. The proposed "arbitration" is not about contract interpretation; it is merely about whether the contract is enforceable. If the answer is yes, then L'Anse owes money on the grossly inflated prices of

---

[1] Moreover, CEW's application will require a hearing due to the conflicting material facts. *See Gen. Elec. Co. v. Am. Wholesale Co.*, 235 F.2d 606, 608 (7th Cir. 1956) (holding that an injunction should not issue based on affidavits where there are conflicting issues of fact and an evidentiary hearing has not been held). And a hearing on the supply agreement will require the same testimony and evidence that will be elicited and utilized in the New York action.

fuel pellets included in the supply agreement. If the answer is no (as it should be), then the question becomes how much CEW and the other New York defendants owe L'Anse and the other New York plaintiffs as a result of the fraud. The issue of non-payment by L'Anse is simply an outgrowth and result of the fraud perpetrated by CEW and the other New York defendants. That issue does not stand alone, as CEW contends.

**2. The New York Injunction Does Involve the Supply Agreement**

It is CEW that is being misleading in reference to the subject matter of the New York injunction. The New York injunction certainly involves the intellectual property, emails and trade secrets that the New York defendants, including CEW, misappropriated as part of the fraudulent scheme -- the same fraudulent scheme that imposed the supply agreement on L'Anse where none existed before. So while the New York injunction does not call for the parties to interpret provisions of the supply agreement per se, to grant a temporary restraining order, as the New York court has already done, and to grant an injunction, as the New York court should do, the New York court has had to consider the merits of the claims, including evidence about and the merits of L'Anse's claim about the impropriety of the supply agreement.

The import of the New York injunction to the Wisconsin proceedings is the fact that there already is a federal judge engaged in adjudicating the merits of the parties' overall dispute, including that portion of the dispute over the supply agreement. The New York case was filed before this case, encompasses the totality of the dispute rather than a piece of the dispute (CEW presented this Court with only a piece of the overall dispute) and is geographically more appropriate to the facts of the dispute. For all of the reasons articulated in this memorandum, L'Anse submitted a motion to stay the arbitration before the New York court.

### 3. The Supply Agreement Evidence is in New York, not Wisconsin.

The relevant evidence over the viability of a fraudulently procured contract is not in Wisconsin. The dispute is not over invoices or pellet deliveries. It is about the fraud that occurred. Those witnesses are, for the most part, in New York and not in Wisconsin. And for this reason, among others, the interest of justice factor cited by CEW runs in favor of transferring the matter to New York.

### 4. The Injunction is About Money Damages and that is Improper.

CEW's "most important fact" is that L'Anse has consumed $300,000 in pellets without payment and is likely to consume more. This is also the reason the request for an injunction fails. CEW seeks an order to compel payment of a past debt L'Anse contests, but that is nothing more than a money judgment disguised as an injunction. Of course, calling it an injunction fails to change its true character and injunctions do not lie to address issues that can be compensated in damages adequately. Injunctions exist to address circumstances where damages are inadequate and cannot address the harm. CEW identifies no such circumstances and essentially argues itself out of court.

### 5. L'Anse Does Address the Supply Agreement.

L'Anse does not "ignore the language of the Supply Agreement itself that provides for the temporary relief CE-Wisconsin seeks," as CEW contends (see page 2 of CEW's memorandum). The opposite is true. L'Anse pointed to the contract language to highlight how it does not call for unqualified injunctive relief or mandate a specific jurisdiction to request such injunctive relief, and how such contract provisions cannot serve as the basis of injunctive relief under both Wisconsin and New York law.

### 6. Racing to the Courthouse Should Not be Condoned.

CEW concedes that it filed the declaratory judgment action as a pre-emptive response to the prospect of suit in New York. The idea that the New York complaint was filed "unbeknownst to CEW" is nonsense when CEW admits filing their complaint on the same day they understood L'Anse said it would file. This was apparently the proverbial race to the courthouse, but it is just part of the gamesmanship CEW has displayed throughout.

Case in point: filing the Eastern District case to obtain that court's blessing of the supply agreement and then filing a Western District case to enforce the same agreement. CEW filed two lawsuits on the same subject in different courts a few weeks apart. And when that strategy came under criticism by this Court – the first court to address the Wisconsin actions, CEW revised the Eastern District complaint to eliminate reference to the supply agreement, as if such a simplistic effort would now justify litigating this acquisition in four different forums. This blatant manipulation should not be judicially rewarded.

CEW's filing of an amended complaint in the Eastern District Tuesday evening, eliminating L'Anse as a named party and removing direct reference to the supply agreement, is a tacit admission that its filing in the Western District was completely inappropriate. (Supplemental Declaration of George Burnett, Ex. A.). That amended complaint seeks the Court's blessing that the acquisition agreement was fully and fairly negotiated. (*Id.* ¶53). The amended complaint asserts that a separation agreement between Steven Brooks, the former Libra Capital US, Inc. executive who superintended the sale while also serving as an architect of the fraud, and Libra Capital US, Inc. somehow released others from the claims filed in New York. (*Id.* ¶54). How this amendment justifies conducting three different lawsuits and an arbitration all pertaining to one acquisition is a mystery.

But the strategy is flawed, because even with the amendment, the Eastern District lawsuit still implicates the supply agreement that is the subject of the actions in the Western District and the Southern District of New York. The amended complaint seeks a declaration that CEW and others have been released of all claims "including but not limited to the claims set forth in the Draft New York Complaint." (*Id.* ¶56). But the New York complaint makes strong allegations and serious claims against CEW over the supply agreement. The New York complaint charges that Steven Brooks misled his employer about "the appropriateness of the new Supply Agreement between the Power Plant and the Pellet Plant" and seeks compensation because "the Power Plant is being overcharged in its supply contract with the Pellet Plant, the Power Plant is being overcharged for [Theodore] Hansen's time to run the Pellet Plant post-acquisition, and $196,420.00 in cash went to the Pellet Plant instead of Convergen at the closing. (*Id.* ¶¶49,62, 65). The New York complaint adds that Brooks ordered significant capital improvements at the pellet plant at Convergen Energy's expense shortly before closing, and that CEW aided, abetted, and profited from all these efforts. (*Id.* ¶¶4, 80-5). The complaint also charges and seeks damages for the invasion and theft of confidential information and trade secrets pertaining to L'Anse's power plant. (*Id.* ¶¶70-2, 86-94, 100-24).

The important point is that the New York complaint is replete with allegations pertinent to the power plant and charges CEW for damages involving the supply agreement, not to mention its rescission. By seeking a declaration that the Defendants somehow released those claims, the Plaintiffs necessarily implicate the New York and Western District actions. The amended complaint is, then, nothing more than a subterfuge to pretend that this case no longer involves the supply agreement, when the supply agreement is one of the agreements at its center.

## **CONCLUSION**

A transfer of the case to New York is the most logical and equitable result and will not prejudice any of the parties. CEW may then try its luck and seek an emergency injunction from the New York court if it remains confident that it meets the high standard for such relief.

Respectfully submitted this 25th day of June, 2020.

    /s/R. George Burnett_____
R. George Burnett
Law Firm of Conway, Olejniczak & Jerry, S.C.
P.O. Box 23200
Green Bay, WI 54305-3200
Phone: (920) 437-0476
Fax: (920) 437-2868
Wis. State Bar No. 1005964
gb@lcojlaw.com

Michael Stolper
Seiden Law Group, LLP
469 Seventh Avenue, Suite 502
New York, NY 10018
Phone: 212-337-3502
Mstolper@Seidenlegal.com
Admitted Pro Hac Vice

*Attorneys for Defendant, L'Anse Warden Electric Company, LLC*

3443292_2