UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------

CONVERGEN ENERGY WI, LLC,

                Plaintiff,

     -v-

L'ANSE WARDEN ELECTRIC COMPANY, LLC,

                Defendant.

----------------------------------------------------

Civil Action No. 20-cv-5240 (LJL)

Related to:
Civil Action No. 20-cv-3746 (LJL)

**DECLARATION OF GREGORY BAHRMAN**

Gregory Bahrman makes the following declaration under penalty of perjury:

1.      I am the sole shareholder and officer of Bahrman, Inc. ("**Bahrman**"). I base this Declaration on personal knowledge, and submit it in support of Plaintiff's Motion for Preliminary Injunction.

2.      Bahrman is a motor carrier licensed by the Federal Motor Carrier Safety Administration to provide interstate trucking and transportation services.

3.      Bahrman was incorporated in 2018 but the business has been operating for over 30 years.  Bahrman is operated out of Gwinn, MI 49841.

4.      Since approximately 2017 we have been the exclusive shipper of pellets for Convergen Energy WI, LLC ("**CEW**") for delivery to L'Anse Warden Electric Company, LLC ("**LWEC**") located in L'Anse, Michigan.

5.      With cooperation between CEW and LWEC, we developed an efficient process for the managed delivery of pellets.

6.      Prior to the cessation of pellet deliveries in July 2020, Bahrman would take possession of pellets at the CEW facility located in Green Bay, Wisconsin and deliver them to a Bahrman warehouse facility in Michigan for storage prior to ultimate delivery to LWEC.

1

7.      The short-term storage at the Bahrman warehouse occurred because both CEW and LWEC had limited storage capacity, it created a buffer anytime there was a difference between the production and consumption of the product, and because of the different carrier transportation rules between Wisconsin and Michigan.  In Michigan, heavier loads exceeding 80,000 lbs are permitted.

8.      Shipping from Green Bay, Wisconsin to the warehouse in Michigan allowed us to reduce overall transportation costs while assuring the more reliable delivery of pellets according to LWEC's needs.

9.      To facilitate this delivery process, Bahrman has made significant investments in new equipment to assure reliable and consistent delivery of pellets.  We purchased two custom built trailers and a wheel loader in the second quarter of 2019, borrowing money to make the purchase. The custom built, self-unloading trailers were required to transport the loads of pellets north in addition to the loads of chips we transport south. The self-unloading trailers are not required to haul our wood chips.

10.     We took out the loan to purchase the custom equipment relying on the CEW and LWEC business to be able to repay the loan.

11.     We currently do not have other business where we can redeploy the new equipment and make up for the lost revenue.

12.     Without the CEW and LWEC business, we are being forced into a decision to either sell the equipment or default on our loan.  Either way, we will no longer be in a position to continue to serve CEW and LWEC.

13.     Additionally, we will very soon have to lay off our drivers that serviced the CEW and LWEC business.  We have attempted to conserve our resources and keep as many drivers as

possible employed.  But, with the cessation of the CEW and LWEC business, we have too many

drivers.

14.     With the extended cessation of business, we can no longer service the loan nor incur

the expenses of holding the equipment purchased for the sole use with the CEW and LWEC

business nor the drivers dedicated to that line.

15.     If the cessation of business continues longer, we will have to sell equipment and

release drivers; replacing these trucks and drivers presents an insurmountable challenge in the

event that the business would begin again at some point in the future.

16.     The cessation of the business from CEW and LWEC has damaged the our business

relationship because we have made commitments to drivers and lenders that we would likely be

unable to keep.  If the business were to be permanently lost, we would likely be unable to start

again because purchasing new, custom equipment and hiring drivers would be difficult.

17.     The system we jointly developed seemed to work exceptionally well and was

created at significant cost on our part.  We would not be willing to go down that path again if the

cessation of business is permanent.

18.     Within a short period I will need to decide whether to sell the equipment used in

the CEW and LWEC lanes.  I hope to receive enough to pay off the loans secured by the trucks,

but with today's Covid induced glut of used truck inventory, it is unlikely I will recover the amount

of the loans.

19.     There is high demand for drivers, and we would not be able to rehire our drivers

again if they were laid off because they would quickly find other jobs.

20.     For the above reasons, in the event we must take drastic steps to preserve the remaining Bahrman business, the part of the supply chain we provided to CEW and LWEC would be difficult to rebuild.

Signature Page Follows

5

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated this ___23___ day of September, 2020.

Gregory Bahrman